CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
10 Grand Central
155 East 44th Street – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

| | |
|---|---|
| JOSE PENA, LUIS HERNANDEZ, | Case No2)-CV-781). |
| VICTORINO MENDEZ DE LA CRUZ, | |
| VANESA LARGO, MIGUEL HERNANDEZ, | |
| LUIS ALMONTE, RUFINO PERALTO, | |
| PABLO GONZALEZ, RICARDO GARCIA, | |
| ALEJANDRO VALERIO, ESDRAS MORALES, | |
| ANIBAL SIGARAN, and KARLA CALDERON, | |
| on behalf of themselves and others similarly situated, | |
| | |
| Plaintiffs, | FLSA COLLECTIVE |
| | ACTION and RULE |
| -against- | 23 CLASS ACTION |
| | COMPLAINT |
| CARIB INC. d/b/a HAVANA NY RESTAURANT & | |
| BAR, HNY INC. d/b/a HAVANA NY RESTAURANT & | **Jury Trial** |
| BAR, and ABBAI TAGHAVITALAB, | **Demanded** |
| | |
| Defendants. | |

-------------------------------------------------------------------X

Plaintiffs JOSE PENA, LUIS HERNANDEZ, VICTORINO MENDEZ DE LA

CRUZ, VANESA LARGO, MIGUEL HERNANDEZ, LUIS ALMONTE, RUFINO

PERALTO, PABLO GONZALEZ, RICARDO GARCIA, ALEJANDRO VALERIO,

ESDRAS MORALES, ANIBAL SIGARAN, and KARLA CALDERON ("Plaintiffs"),

on behalf of themselves and other similarly situated employees, by and through their

undersigned attorneys, Cilenti & Cooper, PLLC, file this Complaint against defendants

CARIB INC. d/b/a HAVANA NY RESTAURANT & BAR ("CARIB INC."), HNY INC. d/b/a HAVANA NY RESTAURANT & BAR ("HNY INC.") (collectively, the "Corporate Defendants"), and ABBAI TAGHAVITALAB (collectively, "Defendants"), and state as follows:

## INTRODUCTION

1.     Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) liquidated damages, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

2.     Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) unpaid "spread of hours" premium for each day that their work shift exceeded ten (10) hours, (d) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (e) prejudgment and post-judgment interest, and (f) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiffs JOSE PENA, MIGUEL HERNANDEZ, LUIS ALMONTE, RUFINO PERALTO, PABLO GONZALEZ, ALEJANDRO VALERIO, and KARLA CALDERON are each residents of Bronx County, New York.

6.      Plaintiffs LUIS HERNANDEZ, VANESA LARGO, RICARDO GARCIA, and ESDRAS MORALES are each residents of Queens County, New York.

7.      Plaintiff, VICTORINO MENDEZ DE LA CRUZ, is a resident of Kings County, New York.

8.      Plaintiff, ANIBAL SIGARAN, is a resident of Nassau County, New York.

9.      Defendant, CARIB INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 58 West 38th Street, New York, New York 10018.

10.     Defendant, CARIB INC., owns and operates a Cuban restaurant, doing business as "Havana NY Restaurant & Bar," located at 58 West 38th Street, New York, New York 10018 (the "Current Restaurant").

11.     Defendant, HNY INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 58 West 38th Street, New York, New York 10018.

12.     Defendant, HNY INC., formerly owned and operated a Cuban restaurant, doing business as "Havana NY Restaurant & Bar," located at 27 West 38th Street, New York, New York 10018 (the "Closed Restaurant").[1]

---

[1] The Current Restaurant and the Closed Restaurant are collectively referred to in the plural as the "Restaurants."

13.     Sometime in or about February 2015, Defendants ceased operating the Closed Restaurant.

14.     In or about September 2016, Defendants commenced operating the Current Restaurant at 58 West 38th Street, New York, New York 10018.

15.     Regardless of location, the Restaurants owned and operated by Defendants have done business as "Havana NY Restaurant & Bar."

16.     Regardless of location, the Restaurants owned and operated by Defendants always employed more than eleven (11) individuals.

17.     Defendant, ABBAI TAGHAVITALAB, is the Chief Executive Officer of the Corporate Defendants and, as such, is the owner, shareholder, supervisor, managing agent, and proprietor of the Corporate Defendants, who actively participated in the day-to-day operation of the Closed Restaurant and participates in the day-to-day operation of the Current Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

18.     Defendant, ABBAI TAGHAVITALAB, exercised/s control over the employment terms and conditions of the Restaurants' employees in that he had and continues to have the power to and does in fact: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise the work of the employees, and (v) create and maintain proper wage and hour records.

19.     At least within each of the three (3) most recent years related to the allegations herein, CARIB INC. was, and continues to be, an "enterprise engaged in

4

commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

20.     At least within each of the three (3) most recent years related to the allegations herein, HNY INC. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

21.     Defendants employed Plaintiff, JOSE PENA, to work as a non-exempt cook and food preparer for Defendants' Restaurants from on or about 2012 until on or about March 6, 2020.

22.     Defendants employed Plaintiff, LUIS HERNANDEZ, to work as a non-exempt food runner for Defendants' Current Restaurant from in or about September 2016 until on or about March 7, 2020.

23.     Defendants employed Plaintiff, VICTORINO MENDEZ DE LA CRUZ, to work as a non-exempt food preparer/kitchen helper for Defendants' Restaurants from in or about 2009 until on or about March 13, 2020.

5

24.     Defendants employed Plaintiff, VANESA LARGO, to work as a non-exempt bartender for Defendants' Current Restaurant from in or about December 2018 through in or about March 2019.

25.     Defendants employed Plaintiff, MIGUEL HERNANDEZ, to work as a non-exempt busboy for Defendants' Closed Restaurant from in or about 2009 until in or about February 2015; and as a non-exempt food runner for Defendants' Current Restaurant from in or about September 2016 until on or about March 15, 2020.

26.     Defendants employed Plaintiff, LUIS ALMONTE, to work as a non-exempt cook for Defendants' Current Restaurant from on or about October 29, 2016 until on or about December 27, 2018.

27.     Defendants employed Plaintiff, RUFINO PERALTO, to work as a non-exempt food preparer/kitchen helper for Defendants' Restaurants from in or about February 2013 until in or about February 2015, and again from September 2016 until in or about April 2019.

28.     Defendants employed Plaintiff, PABLO GONZALEZ, to work as a non-exempt food runner for Defendants' Current Restaurant from in or about March 2017 until in or about March 2019.

29.     Defendants employed Plaintiff, RICARDO GARCIA, to work as a non-exempt bartender and waiter for Defendants' Current Restaurant from in or about September 2016 until in or about February 2019; and again from in or about August 2019 through in or about September 2019; and again from in or about November 2019 through in or about January 2020.

30.     Defendants employed Plaintiff, ALEJANDRO VALERIO, to work as a non-exempt cook for Defendants' Restaurants from in or about 2011 through in or about February 2015, and again from in or about November 2016 until in or about December 2018.

31.     Defendants employed Plaintiff, ESDRAS MORALES, to work as a non-exempt busboy, food runner, and bar back for Defendants' Current Restaurant from in or about February 2017 until in or about February 2019.

32.     Defendants employed Plaintiff, ANIBAL SIGARAN, to work as a non-exempt bartender for Defendants' Current Restaurant from in or about December 2016 until in or about June 2019.

33.     Defendants employed Plaintiff, KARLA CALDERON, to work as a non-exempt bartender for Defendants' Current Restaurant from in or about September 2016 through in or about September 2017.

34.     The work performed by Plaintiffs was directly essential to the business operated by Defendants.

35.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

36.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

37.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

38.     Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

39.     Defendant, ABBAI TAGHAVITALAB, actively participated in the day-to-day operation of the Closed Restaurant, and continues to actively participate in the day-to-day operation of the Current Restaurant.   For instance, Mr. Taghavitalab personally makes the decisions to hire and fire employees; supervises and directs the work of the employees; and instructs the employees how to perform their jobs.

40.     Additionally, Mr. Taghavitalab creates and implements all business policies and makes all crucial business decisions, including decisions concerning the number of hours the employees are permitted to work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

**Plaintiff Jose Pena**

41.     In or about 2012, Defendants hired Plaintiff, JOSE PENA, to work as a non-exempt cook at the Closed Restaurant.

42.     Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

43.     Plaintiff worked for Defendants in that capacity until Defendants ceased operating the Closed Restaurant in or about February 2015.

8

44.     Upon opening the Current Restaurant in or about September 2016, Defendants re-hired Plaintiff to work in the same capacity.

45.     Neither at the time of re-hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

46.     Plaintiff worked for Defendants in that capacity until on or about March 6, 2020.

47.     Plaintiff worked over forty (40) hours per week.

48.     Throughout the entirety of his employment, Plaintiff worked six (6) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked eight (8) hours per day Monday through Friday from 7:00 a.m. until 3:00 p.m.; and six (6) hours on Saturday from 9:00 a.m. until 3:00 p.m. Plaintiff did not receive a designated break for rest or meals.

49.     Approximately two (2) weeks per year Plaintiff worked double shifts consisting of fourteen (14) hours per day Monday through Friday from 7:00 a.m. until 3:00 p.m., and 4:00 p.m. until 10:00 p.m.; and six (6) hours on Saturday from 9:00 a.m. until 3:00 p.m.

50.     Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift. However, Defendants instructed Plaintiff to not punch in or out on Fridays and Saturdays.

51.     From the beginning of the relevant six (6) year limitations period in September 2014 and continuing through in or about February 2015 while working at the

Closed Restaurant, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $16 per hour straight time for all hours worked, and worked at least forty-six (46) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

52.     Upon being re-hired to work at the Current Restaurant in or about September 2016 and continuing through in or about June 2017, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $18 per hour straight time for all hours worked, and worked at least forty-six (46) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

53.     Beginning in or about July 2017 and continuing through in or about August 2018, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $19 per hour straight time for all hours worked, and worked at least forty-six (46) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

54.     Beginning in or about September 2018 and continuing through the remainder of his employment on or about March 6, 2020, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $20 per hour straight time for all hours worked, and worked at least forty-six (46) hours per week, and

sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

55.     Throughout his employment, Plaintiff was paid by check for the first thirty-five (35) hours worked per week, with the remaining hours paid in cash.

56.     Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

57.     Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's true gross wages, deductions, and net wages.

**Plaintiff Luis Hernandez**

58.     In or about September 2016, Defendants hired Plaintiff, LUIS HERNANDEZ, to work as a non-exempt food runner at the Current Restaurant.

59.     Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

60.     Plaintiff worked for Defendants in that capacity until on or about March 7, 2020.

61.     Plaintiff worked over forty (40) hours per week.

62.     From the beginning of his employment and continuing through in or about September 2019, Plaintiff worked five (5) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked seven and one-half (7½) hours

per day on Tuesday, Wednesday, and Saturday from 4:00 p.m. until 11:30 p.m.; and twelve and one-half (12½) hours per day on Thursday and Friday from 11:00 a.m. until 11:30 p.m. Plaintiff received a designated one-hour break for rest or meals only on Thursdays and Fridays.

63. Beginning in or about October 2019 continuing through the remainder of his employment on or about March 7, 2020, Plaintiff worked four (4) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked seven and one-half (7½) hours per day Wednesday through Saturday from 4:00 p.m. until 11:30 p.m. Plaintiff did not receive a designated break for rest or meals during this time.

64. Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

65. From the beginning of his employment and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $8 per hour straight time for all hours worked, and worked at least forty-five and one-half (45½) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

66. Beginning in or about January 2019 and continuing through in or about September 2019, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked, and worked at least forty-five and one-half (45½) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per

week was not paid at the statutory rate of time and one-half as required by state and federal law.

67.     Beginning in or about October 2019 and continuing through the remainder of his employment on or about March 7, 2020, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $10 per hour, and worked at least thirty (30) hours per week, and sometimes in excess thereof.

68.     Throughout his employment, Plaintiff was paid by check for the first forty (40) hours worked per week, with the remaining hours paid in cash.

69.     Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

70.     Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Plaintiff Victorino Mendez De La Cruz**

71.     In or about 2009, Defendants hired Plaintiff, VICTORINO MENDEZ DE LA CRUZ (a/k/a "Miguel"), to work as a non-exempt food preparer/kitchen helper at the Closed Restaurant.

72.     Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

73.     Plaintiff worked for Defendants in that capacity until Defendants ceased operating the Closed Restaurant in or about February 2015.

74.     Upon opening the Current Restaurant in or about September 2016, Defendants re-hired Plaintiff to work in the same capacity.

75.     Neither at the time of re-hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

76.     Plaintiff worked for Defendants in that capacity until on or about March 13, 2020.

77.     Plaintiff worked over forty (40) hours per week.

78.     Throughout the entirety of his employment, Plaintiff worked six (6) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked eleven (11) hours per day on Monday through Saturday from 7:00 a.m. until 6:00 p.m.  Plaintiff received a one-hour designated break for rest or meals.

79.     Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

80.     From the beginning of the relevant six (6) year limitations period in September 2014 and continuing through in or about February 2015 while working at the Closed Restaurant, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $6 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and

sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

81.     Upon being re-hired to work at the Current Restaurant in or about September 2016 and continuing through in or about December 2016, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

82.     Beginning in or about January 2017 and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

83.     Beginning in or about January 2019 and continuing through the remainder of his employment on or about March 13, 2020, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $12 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

84.      Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

85.      Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's true gross wages, deductions, and net wages.

**Plaintiff Vanesa Largo**

86.      In or about December 2018, Defendants hired Plaintiff, VANESA LARGO, to work as a non-exempt bartender at the Current Restaurant.

87.      Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, her regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

88.      Plaintiff worked for Defendants in that capacity until in or about March 2019.

89.      Throughout her employment, Plaintiff worked three (3) days per week and, although her work schedule fluctuated slightly each day and week, she typically worked six (6) hours per day twice per week from 5:00 p.m. until 11:00 p.m.; and twelve (12) hours once per week from 11:00 a.m. until 11:00 p.m.  Plaintiff received a designated thirty-minute break for rest or meals only on the day that she worked a double-shift.

90.      Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

91.     From the beginning of her employment and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $7.50 per hour, and worked at least twenty-three and one-half (23½) hours per week, and sometimes in excess thereof.

92.     Beginning in or about January 2019 and continuing through the remainder of her employment in or about March 2019, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $10 per hour, and worked at least twenty-three and one-half (23½) hours per week, and sometimes in excess thereof.

93.     Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of her work shift exceeded ten (10) hours.

94.     Upon paying Plaintiff her wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Plaintiff Miguel Hernandez**

95.     In or about 2009, Defendants hired Plaintiff, MIGUEL HERNANDEZ, to work as a non-exempt food busboy at the Closed Restaurant.

96.     Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

97.     Plaintiff worked for Defendants in that capacity until Defendants ceased operating the Closed Restaurant in or about February 2015.

17

98.     Upon opening the Current Restaurant in or about September 2016, Defendants re-hired Plaintiff to work as a non-exempt food runner.

99.     Neither at the time of re-hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

100.    Plaintiff worked for Defendants in that capacity until on or about March 15, 2020.

101.    Plaintiff worked over forty (40) hours per week.

102.    From the beginning of the relevant six (6) year limitations period in September 2014 and continuing through in or about February 2015, while working as a busboy at the Closed Restaurant, Plaintiff worked five (5) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked twelve (12) hours per day Wednesday through Saturday from 11:00 a.m. until 11:00 p.m.; and seven (7) hours on Tuesday from 4:00 p.m. until 11:00 p.m.  Plaintiff received a designated one-hour break for rest or meals only on the days that he worked a double-shift.

103.    Upon being re-hired to work as a food runner at the Current Restaurant in or about September 2016 and continuing through the end of September 2016, Plaintiff worked six (6) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked twelve (12) hours per day Monday through Saturday from 11:00 a.m. until 11:00 p.m.  Plaintiff received a designated one-hour break for rest or meals.

104.    Beginning in or about October 2016 and continuing through on or about March 7, 2020, Plaintiff worked five (5) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked twelve (12) hours per day Wednesday through Saturday from 11:00 a.m. until 11:00 p.m.; and seven (7) hours on Tuesday from 4:00 p.m. until 11:00 p.m.  Up until October 2019, Plaintiff received a designated one-hour break for rest or meals only on the days that he worked a double-shift.  Thereafter, Plaintiff's break time was reduced to thirty minutes.

105.    Beginning on or about March 8, 2020 and continuing through the remainder of his employment on or about March 15, 2020, Plaintiff worked three (3) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked eight (8) hours per day Wednesday and Thursday from 11:00 a.m. until 7:00 p.m.; and seven (7) hours on Tuesday from 4:00 p.m. until 11:00 p.m.  Plaintiff did not receive a designated break for rest or meals.

106.    Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

107.    From the beginning of the relevant six (6) year limitations period in September 2014 and continuing through in or about February 2015, while working as a busboy at the Closed Restaurant, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $9 per hour straight time for all hours worked, and worked at least fifty-one (51) hours per week, and sometimes in excess thereof.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

108.     Upon being re-hired to work as a food runner at the Current Restaurant in or about September 2016 and continuing through the remainder of September 2016, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $9 per hour straight time for all hours worked, and worked at least sixty-six (66) hours per week, and sometimes in excess thereof.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

109.     Beginning in or about October 2016 and continuing through in or about December 2016, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $9 per hour straight time for all hours worked, and worked at least fifty-one (51) hours per week, and sometimes in excess thereof.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

110.     Beginning in or about January 2017 and continuing through in or about September 2019, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked and worked at least fifty-one (51) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

111.     Beginning in or about October 2019 and continuing through on or about March 7, 2020, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked and worked at least fifty-three (53) hours per week.  Work

performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

112.    Beginning on or about March 8, 2020 and continuing through the remainder of his employment on or about March 15, 2020, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $10 per hour, and worked at least twenty-three (23) hours per week, and sometimes in excess thereof.

113.    Throughout his employment, Plaintiff was paid by check for the first forty (40) hours worked per week, with the remaining hours paid in cash.

114.    Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

115.    Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Luis Almonte**

116.    On or about October 29, 2016, Defendants hired Plaintiff, LUIS ALMONTE, to work as a non-exempt cook at the Current Restaurant.

117.    Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

118.    Plaintiff worked for Defendants in that capacity until on or about December 27, 2018

119.    Plaintiff worked over forty (40) hours per week.

120.    Throughout the entirety of his employment, Plaintiff worked six (6) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked eleven (11) hours per day on Monday through Saturday from 12:00 p.m. until 11:00 p.m.  Plaintiff received a designated thirty-minute break for rest or meals.

121.    Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift, but Defendants instructed Plaintiff to not record more than forty (40) hours per week on his time cards.

122.    From the beginning of his employment and continuing through in or about December 2017, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $13 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

123.    Beginning in or about January 2018 and continuing through the remainder of his employment on or about December 27, 2018, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $15 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

124.    Throughout his employment, Plaintiff was paid by check for the first forty (40) hours worked per week, with the remaining hours paid in cash.

125.    Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

126.    Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Rufino Peralto**

127.    In or about February 2013, Defendants hired Plaintiff, RUFINO PERALTO, to work as a non-exempt food preparer/kitchen helper at the Closed Restaurant.

128.    Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

129.    Plaintiff worked for Defendants in that capacity until Defendants ceased operating the Closed Restaurant in or about February 2015.

130.    Upon opening the Current Restaurant in or about September 2016, Defendants re-hired Plaintiff to work in the same capacity.

131.    Neither at the time of re-hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

132.   Plaintiff worked for Defendants in that capacity until in or about April 2019.

133.   Plaintiff worked over forty (40) hours per week.

134.   Throughout the entirety of his employment, Plaintiff worked six (6) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked eleven (11) hours per day on Monday through Saturday from 12:00 p.m. until 11:00 p.m.   Plaintiff received a designated thirty-minute break for rest or meals.

135.   Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift, but Defendants altered his time records to reflect only forty (40) hours of work per week.

136.   From the beginning of the relevant six (6) year limitations period in September 2014 and continuing through in or about February 2015 while working at the Closed Restaurant, Plaintiff was not paid proper overtime compensation.   During this period, Plaintiff was paid at the rate of $15 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

137.   Upon being re-hired to work at the Current Restaurant in or about September 2016 and continuing through in or about December 2017, Plaintiff was not paid proper overtime compensation.   During this period, Plaintiff was paid at the rate of $17 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof.   Work performed above forty (40) hours per

week was not paid at the statutory rate of time and one-half as required by state and federal law.

138.    Beginning in or about January 2018 and continuing through the remainder of his employment in or about April 2019, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $20 per hour straight time for all hours worked, and worked at least sixty-three (63) hours per week, and sometimes in excess thereof.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

139.    Throughout his employment, Plaintiff was paid by check for the first forty (40) hours worked per week, with the remaining hours paid in cash.

140.    Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

141.    Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's true gross wages, deductions, and net wages.

**Pablo Gonzalez**

142.    In or about March 2017, Defendants hired Plaintiff, PABLO GONZALEZ, to work as a non-exempt food runner at the Current Restaurant.

143.    Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

144.   Plaintiff worked for Defendants in that capacity until in or about March 2019.

145.   Throughout the entirety of his employment, Plaintiff worked three (3) days per week and, although his work schedule fluctuated slightly each day and week, he typically worked eleven (11) hours per day on Monday and Tuesday from 11:00 a.m. until 10:00 p.m.; and five (5) hours on Wednesday from 11:00 a.m. until 4:00 p.m. Plaintiff did not receive a designated break for rest or meals.

146.   Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

147.   From the beginning of his employment and continuing through in or about December 2017, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $8.75 per hour, and worked at least twenty-seven (27) hours per week, and sometimes in excess thereof.

148.   Beginning in or about January 2018 and continuing through the remainder of his employment in or about March 2019, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $10 per hour, and worked at least twenty-seven (27) hours per week, and sometimes in excess thereof.

149.   Throughout his employment, Plaintiff was paid by check.

150.   Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

151.     Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Ricardo Garcia**

152.     In or about September 2016, Defendants hired Plaintiff, RICARDO GARCIA, to work as a non-exempt bartender and waiter at the Current Restaurant.

153.     Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

154.     Plaintiff worked for Defendants in those capacities until in or about February 2019.

155.     In or about August 2019, Defendants re-hired Plaintiff to work at the Current Restaurant in the same capacities.

156.     Neither at the time of re-hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

157.     Plaintiff worked for Defendants in those capacities until in or about September 2019.

158.     In or about November 2019, Defendants again re-hired Plaintiff to work at the Current Restaurant in the same capacities.

159.    Neither at the time of re-hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

160.    Plaintiff worked for Defendants in those capacities until his employment came to a final conclusion in or about January 2020.

161.    Throughout the entirety of his employment, Plaintiff typically worked five (5) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked eleven (11) hours on Tuesday from 11:00 a.m. until 10:00 p.m.; six (6) hours on Wednesday from 4:00 p.m. until 10:00 p.m.; twelve (12) hours per day on Thursday and Saturday from 11:00 a.m. until 11:00 p.m.; and seven (7) hours on Friday from 4:00 p.m. until 11:00 p.m. and five (5) hours on Wednesday from 11:00 a.m. until 4:00 p.m.  Plaintiff received a designated thirty (30) minute break for rest or meals.

162.    Plaintiff would occasionally work six (6) days per week.

163.    When working six (6) days per week, Plaintiff would work an additional six (6) hours on Monday from 4:00 p.m. until 10:00 p.m.

164.    Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

165.    From the beginning of his employment and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $7.50 per hour straight time for all hours worked, and worked at least forty-five and one-half (45½) hours per week, and sometimes in excess thereof.  Work performed above forty (40) hours per

week was not paid at the statutory rate of time and one-half as required by state and federal law.

166. Beginning in or about January 2019 and continuing through the remainder of his employment in or about November 2019, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked, and worked at least forty-five and one-half (45½) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

167. Throughout his employment, Plaintiff was paid by check up to forty (40) hours per week, with the remaining hours paid in cash.

168. Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

169. Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Alejandro Valerio**

170. In or about 2011, Defendants hired Plaintiff, ALEJANDRO VALERIO, to work as a non-exempt cook at the Closed Restaurant.

171. Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly

rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

172.     Plaintiff worked for Defendants in that capacity until Defendants ceased operating the Closed Restaurant in or about February 2015.

173.     Upon opening the Current Restaurant in or about September 2016, Defendants re-hired Plaintiff to work in the same capacity.

174.     Neither at the time of re-hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

175.     Plaintiff worked for Defendants in that capacity until in or about December 2018.

176.     Plaintiff worked over forty (40) hours per week.

177.     From the beginning of his employment and continuing through in or about August 2019, Plaintiff worked six (6) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked eight (8) hours per day Monday through Wednesday from 3:00 p.m. until 11:00 p.m.; and eleven (11) hours per day Thursday through Saturday from 12:00 p.m. until 11:00 p.m. Plaintiff received a designated thirty-minute break for rest or meals.

178.     Beginning in or about September 2018 and continuing through the remainder of his employment in or about December 2018, Plaintiff's work schedule was reduced to approximately thirty (30) hours per week.

179.    Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

180.    From the beginning of the relevant six (6) year limitations period in September 2014 and continuing through in or about February 2015 while working at the Closed Restaurant, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $9 per hour straight time for all hours worked, and worked at least fifty-four (54) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

181.    Upon being re-hired to work at the Current Restaurant in or about September 2016 and continuing through in or about December 2017, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked, and worked at least fifty-four (54) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

182.    Beginning in or about January 2018 and continuing through in or about August 2019, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $15 per hour straight time for all hours worked, and worked at least fifty-four (54) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

183. Throughout his employment, Plaintiff was paid by check for the first forty (40) hours worked per week, with the remaining hours paid in cash.

184. Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

185. Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's true gross wages, deductions, and net wages.

**Esdras Morales**

186. In or about February 2017, Defendants hired Plaintiff, ESDRAS MORALES, to work as a non-exempt busboy, food runner, and bar back at the Current Restaurant.

187. Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

188. Plaintiff worked for Defendants in those capacities until in or about February 2019.

189. Plaintiff worked over forty (40) hours per week.

190. Throughout the entirety of his employment, Plaintiff typically worked five (5) days per week and, although his work schedule fluctuated slightly each day and week, he normally worked twelve (12) hours per day on Monday and Saturday from 11:00 a.m.

until 11:00 p.m.; and eight hours per day on Wednesday and Friday from 4:00 p.m. until 12:00 a.m. Plaintiff received a designated thirty (30) minute break for rest or meals.

191.    Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

192.    From the beginning of his employment and continuing through in or about December 2017, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $7.00 per hour straight time for all hours worked, and worked at least forty-five and one-half (45½) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

193.    Beginning in or about January 2018 and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $8.65 per hour, and worked at least forty-five and one-half (45½) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

194.    Beginning in or about January 2019 and continuing through the remainder of his employment in or about February 2019, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked, and worked at least forty-five and one-half (45½) hours per week, and sometimes in excess thereof. Work performed above

33

forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

195.     Throughout his employment, Plaintiff was paid by check up to forty (40) hours per week, with the remaining hours paid in cash.

196.     Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

197.     Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Anibal Sigaran**

198.     In or about December 2016, Defendants hired Plaintiff, ANIBAL SIGARAN, to work as a non-exempt bartender at the Current Restaurant.

199.     Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

200.     Plaintiff worked for Defendants in that capacity until in or about June 2019.

201.     Plaintiff worked over forty (40) hours per week.

202.     From the beginning of his employment and continuing through in or about June 2018, Plaintiff typically worked four (4) days per week (days varied) and, although his work schedule fluctuated slightly each day and week, he normally worked thirteen

(13) hours per day from 10:30 a.m. until 11:30 p.m. Plaintiff received a designated thirty (30) minute break for rest or meals.

203. Beginning in or about July 2018 and continuing through the remainder of his employment in or about June 2019, Plaintiff typically worked six (6) days per week, and although his work schedule fluctuated slightly each day and week, he normally worked thirteen (13) hours per day from 10:30 a.m. until 11:30 p.m. Plaintiff received a designated thirty (30) minute break for rest or meals.

204. Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

205. From the beginning of his employment and continuing through in or about December 2017, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $7.25 per hour straight time for all hours worked, and worked at least fifty (50) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

206. Beginning in or about January 2018 and continuing through in or about June 2018, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $8.65 per hour straight time for all hours worked, and worked at least fifty (50) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

207. Beginning in or about July 2018 and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages and overtime

compensation. During this period, Plaintiff was paid at the rate of $8.65 per hour straight time for all hours worked, and worked at least seventy-five (75) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

208.     Beginning in or about January 2019 and continuing through the remainder of his employment in or about June 2019, Plaintiff was not paid proper minimum wages and overtime compensation. During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked, and worked at least seventy-five (75) hours per week, and sometimes in excess thereof. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

209.     Throughout his employment, Plaintiff was paid by check up to forty (40) hours per week, with the remaining hours paid in cash.

210.     Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of his work shift exceeded ten (10) hours.

211.     Upon paying Plaintiff his wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

**Karla Calderon**

212.     In or about September 2016, Defendants hired Plaintiff, KARLA CALDERON, to work as a non-exempt bartender at the Current Restaurant.

36

213.    Neither at the time of hire, nor anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, her regular hourly rate of pay, any tip credits taken against the statutory minimum wage, and Plaintiff's corresponding overtime rate of pay.

214.    Plaintiff worked for Defendants in that capacity until in or about September 2017.

215.    Plaintiff occasionally worked over forty (40) hours per week.

216.    Throughout her employment, Plaintiff typically worked five (5) days per week (days varied) and, although her work schedule fluctuated slightly each day and week, she normally worked twelve (12) hours per day twice per week from 11:00 a.m. until 11:00 p.m.; and five (5) hours per day three (3) times per week from 11:00 a.m. until 4:00 p.m.  Plaintiff received a designated thirty (30) minute break for rest or meals.

217.    Plaintiff was required to punch a time clock or other time-recording device at the start and conclusion of each daily work shift.

218.    Throughout her employment, Plaintiff was not paid proper minimum wages and overtime compensation.  Throughout her employment, Plaintiff was paid at the rate of $7.50 per hour straight time for all hours worked and worked at least thirty-six and one-half (36½), and sometimes in excess thereof.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

219.    Throughout her employment, Plaintiff was paid by check up to forty (40) hours per week, with any additional hours paid in cash.

220.    Plaintiff was not paid for an extra hour of work at the statutory minimum wage for each day that the number of hours between the beginning and end of her work shift exceeded ten (10) hours.

221.    Upon paying Plaintiff her wages each week, Defendants failed to provide Plaintiff with a proper and accurate wage statement setting forth, among other things, Plaintiff's gross wages, deductions, and net wages.

222.    Defendants are not entitled to take any "tip credits" under federal or state law because they: (i) failed to properly provide notice to its tipped employees, including Plaintiffs, that Defendants were taking a "tip credit," (ii) failed to provide proper wage statements informing tipped employees, including Plaintiffs, of the amount of "tip credit" taken for each payment period, and (iii) failed to keep proper records showing the amount of tips received each day and each week by tipped employees, thereby rendering the "tip credit" inapplicable.

223.    Defendants knowingly and willfully operate their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs and other similarly situated employees.

224.    Defendants knowingly and willfully operate their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

225.    Defendants knowingly and willfully operate their business with a policy of not paying Plaintiffs and other similarly situated employees "spread of hours" premium

for each day that their work shift exceeded ten (10) hours, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

226.    At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, the Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

227.    Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt "front-of-the-house" and "back-of-the-house" employees who have been or were employed by Defendants since September 22, 2017 through the close of the opt-in period as ultimately set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage and/or less than time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

228.    The collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

229.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

230.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

231.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

232.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

   a.    Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

b. Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Collective Action Members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. Whether Defendants failed to pay Plaintiffs and the Collective Action Members statutory minimum wages;

e. Whether Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f. Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

g. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

233. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

234. Plaintiffs and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

235. Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

236.    Plaintiffs bring their New York Labor Law claims on behalf of all non-exempt "front-of-the-house" and "back-of-the-house" employees who were employed by Defendants at any time since September 22, 2014 (the "Class Period") through the date the Court grants class certification, and who have not been paid statutory minimum wages and/or overtime compensation in violation of the New York Labor Law (the "Class").

237.    The persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of Defendants, the Class consists of all non-managerial current and former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

238.    The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

239.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

240.    Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

241.    Plaintiffs will fairly and adequately protect the interests of the NY Class members.  Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that they must consider the interests of the Class and Collective Action Members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class or Collective Action Members.

242.    Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members.  Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and they understand that they may be called upon to testify in depositions and at trial.

243.    Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

244.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

> a.    Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York Labor Law;
>
> b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Class members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. Whether Defendants failed to pay Plaintiffs and the Class members statutory minimum wages;

e. Whether Defendants failed to pay Plaintiffs and the Class members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

f. Whether Defendants' violations of the New York Labor Law are willful as that terms is used within the context of the New York Labor Law; and,

g. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

245.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "244" of this Complaint as if fully set forth herein.

246.    At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

Further, Plaintiffs and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

247.    At all relevant times, Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA.

248.    Upon information and belief, at least within each of the three (3) most recent years relevant to the allegations herein, CARIB INC. has had gross revenues in excess of $500,000.

249.    Plaintiffs and the Collective Action Members worked hours for which they were not paid the statutory minimum wage.

250.    Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the Collective Action Members for hours worked.

251.    Defendants failed to pay Plaintiffs and the Collective Action Members minimum wages in the lawful amount for hours worked.

252.    Plaintiffs and the Collective Action Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

253.    Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

254.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and the Collective Action Members for all hours worked in excess of

forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

255.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Action Members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiffs and the Collective Action Members.

256.    As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

257.    Defendants failed to properly disclose or apprise Plaintiffs and the Collective Action Members of their rights under the FLSA.

258.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

259.    Due to Defendants' reckless, willful and unlawful acts, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

260.     Plaintiffs and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

261.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "260" of this Complaint as if fully set forth herein.

262.     Defendants employed Plaintiffs and the Class members within the meaning of New York Labor Law §§ 2 and 651.

263.     Defendants knowingly and willfully violated the rights of Plaintiffs and members of the Class by failing to pay them minimum wages in the lawful amount for hours worked.

264.     Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay Plaintiffs and the Class members overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

265.     Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.  New York State Department of Labor Regulations § 146-1.6.

266.     Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay "spread of hours" premium to Plaintiffs and the Class members for each day that their work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations.

267.     Defendants failed to properly disclose or apprise Plaintiffs and the Class members of their rights under the New York Labor Law.

268.     Defendants failed to furnish Plaintiffs and the Class members with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 146-2.3.

269.     Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

270.     Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

271.     Neither at the time of their hiring, nor thereafter, did Defendants notify Plaintiffs and the Class members of their rates of pay and their regularly designated payday, in contravention of New York Labor Law § 195(1).

272.     Due to Defendants' New York Labor Law violations, Plaintiffs and the Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

273.    Plaintiffs and the Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

## **PRAYER FOR RELEIF**

**WHEREFORE,** Plaintiffs JOSE PENA, LUIS HERNANDEZ, VICTORINO MENDEZ DE LA CRUZ, VANESA LARGO, MIGUEL HERNANDEZ, LUIS ALMONTE, RUFINO PERALTO, PABLO GONZALEZ, RICARDO GARCIA, ALEJANDRO VALERIO, ESDRAS MORALES, ANIBAL SIGARAN, and KARLA CALDERON, on behalf of themselves and all similarly situated Collective Action Members and Class members, respectfully request that this Court grant the following relief:

(a)    An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)    An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)    An award of unpaid "spread of hours" premium due under the New York Labor Law;

(d)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216;

(e)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(f)     An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(g)     An award of prejudgment and post-judgment interest;

(h)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(i)     Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated: New York, New York
         September 22, 2020

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiffs*
10 Grand Central
155 East 44th Street – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102

By: _____
         Giustino (Justin) Cilenti (GC2321)

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, _____JOSE A PEÑA_____, am an employee currently or

formerly employed by _____HAVANA NY_____, and/or related

entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_____3/10_____, 2020

_Jose A. peña_

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, ___LUIS E   HERNANDEZ___, am an employee currently or

formerly employed by ___HAVANA   NY___, and/or related

entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_____3/10_____, 2020

**CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT**

I, **Victorino Mendez De La Cruz**, am an employee currently or formerly employed

by **Havana NY**, and/or related entities. I consent to be a plaintiff in the above-captioned

action to collect unpaid wages.

Dated: New York, New York
    4/14/20

VictorinoMendezdelacruz
**Victorino Mendez De La Cruz**

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, **Vanessa Largo**, am an individual currently or formerly employed by **Havana NY**, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
August 10, 2020

_____
Vanessa Largo

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Miguel Angel Hernandez**, am an individual currently or formerly employed by

**Havana NY**, and/or related entities.  I consent to be a plaintiff in the above-captioned

action to collect unpaid wages.

Dated: New York, New York
    August 14, 2020

**Miguel Angel Hernandez**

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Luis Almonte**, am an individual currently or formerly employed by **Havana NY**, and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
August 14, 2020

X ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
**Luis Almonte**

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Rufino Peralto**, am an individual currently or formerly employed by **Havana NY**, and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
        August 14, 2020

X **Rufino Peralto**

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Pablo Gonzalez**, am an individual currently or formerly employed by **Havana NY**, and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
        August 14, 2020

X _____
  **Pablo Gonzalez**

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, **Ricardo Garcia**, am an individual currently or formerly employed by **Havana NY**, and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
      August 14, 2020

**Ricardo Garcia**

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Alejandro Valerio**, am an individual currently or formerly employed by

**Havana NY**, and/or related entities.  I consent to be a plaintiff in the above-captioned

action to collect unpaid wages.

Dated: New York, New York
August 14, 2020

Alejandro Valerio

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Esdras Morales**, am an individual currently or formerly employed by **Havana NY**, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
       August 14, 2020

Esdras Morales

**CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT**

I, **Anibal Sigaran**, am an individual formerly employed by **Havana NY**, and/or

related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid

wages.

Dated: New York, New York
        September 4, 2020



Anibal Sigaran

**CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT**

    I, **Karla Calderon**, am an individual currently or formerly employed by **Havana NY**, and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated:  New York, New York
       August 14, 2020

_____    08 - 26 - 2020
    **Karla Calderon**